**BALLARD v BECKER, et**

Ohio Appeals, 2nd Dist, Madison Co.

No. 145.   Decided November 7, 1939

Crabbe & Tootle, London, and James F. Bell, Jr., London, for plaintiff-appellee.

Frank J. Murray, London, and T. B. Ware, London, for defendants-appellants.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of defendants' appeal on questions of law from the judgment of the Court of Common Pleas of Madison County, Ohio.

The action in the court below was one to contest the probated will of Philip Becker, deceased.

The petition was in the usual short form.

In making up the issues the trial court followed the statute and by duly journalized entry ordered that it be ascertained by the verdict of the jury whether or not the paper-writing in question was the last will and testament of the said Philip Becker.

In the trial of the case no question was raised by the evidence on the question of mental capacity, undue influence or the form of execution and attestation as provided under the Code.

The sole and only question related to the claimed erasure of a word and substitution of another in Item 4 of said will.   This clause under Item 4 in its entirety reads as follows:

"To Louis Becker my 154 acre farm lying east of the Thomas road provid-

ed he shall pay, at the death of my wife, to his sister, Minnie Becker Ballard, the sum of **One** Thousand Dollars and to his brother, John Becker, the sum of Eight Hundred Dollars."

The above emphasis is ours and for the purpose of identifying the particular word claimed to be written over the word "two".

This word "one", as it appears at the present time, bears evidence of a previous erasure and the letters **o n e** either were printed with pencil or pen and ink or possibly typewritten. The will as a whole was typewritten. Under the letter n is discernible a typewritten w, and under the letter e, although not so clear, may be made out an o. Under the first letter o, and very indistinct, is what is said to be a t.

Under the law the sole and only question to be determined is whether or not the word "one" was inserted in the paper writing before or after its execution and before or after probate.

The testator, Philip Becker, died on January 10, 1938. Mr. T. B. Ware, attorney-at-law and one of the witnesses to the will on January 17, 1938 duly presented the paper writing to the Probate Court of Madison County for probate.

Before so doing, Mr. Ware had procured all necessary waivers and complied with all the conditions precedent necessary to the immediate offer of the will for probate. Mrs. Edna Ware, the wife of T. B. Ware, and also a witness to the will, was with Mr. Ware when he presented himself at the Probate Court with the paper writing in question. According to the testimony of Mr. Ware, and also of the Probate Judge, the paper writing was in a sealed envelope, which was handed to the judge, who broke the seal, casually examined the writing and then immediately took requisite steps through which the paper writing was ordered probated as the last will and testament of Philip Becker. Immediately thereafter the paper writing and other documents were handed to Deputy Grace Gamlin, for the purpose of making copy of will and recording the papers attending its probate. On the same day, or possibly the next forenoon, the deputy in making copy of the will discovered the apparent erasure and writing of the word "one" and immediately called this fact to the attention of Probate Judge Edwards. They together examined this word very carefully, holding the same up to the light, and both determined that the word "one" was manifestly the language of the will, and it was so copied and afterwards recorded. Both Probate Judge Edwards and Deputy Grace Gamlin gave testimony in the will contest case substantially as above.

Attorney T. B. Ware who witnessed the will, testified that he prepared the paper writing at the instance of Mr. Philip Becker. He himself did the typewriting. At first he obtained from Mr. Becker information as to what provisions he wanted to make in his will, and at the same time made notes from which he could formulate the document. After typewriting, using his notes as data, he then read the completed instrument to Mr. Becker. When he got down to the paragraph under Item 4 and the provision for Minnie Becker Ballard, which he had written Two Thousand Dollars, in conformity to what he had understood Mr. Becker to say, the latter then stopped him and said the item should be one thousand and not two thousand, and thereupon he made the change.

The plaintiff presented the testimony of her daughter, her son and herself, and none other. The daughter was nineteen years of age and the son older. The testimony of each was substantially the same.

In substance these three witnesses testified that on April 1, 1938, they saw the will for the first time in the office of the Probate Court. At that time, according to their statement, the "one" was written in longhand and with pen or indelible pencil. That under the written one was plainly discernible the typewritten two. (This was nearly two and one-half months after the will had been probated on January 17, 1938.)

By longhand we presume witnesses

mean script, and not printed, as it now appears.

Mrs. Ballard testified that about a month later she again examined the will and noted an erasure of the word "one" written in longhand and the substitution of the printed "one", and further that while not positive she thinks there had been some further change or erasure since she saw the will the second time.

Mr. Ware gave further testimony that following the execution of the will by Mr. Becker, on February 9, 1937, he first placed the document in the envelope, sealed same and thereafter deposited it in his safe where it had remained continuously from that time until the day he took it in to the Probate Court for probate. Further, that the word "one", as it appears in the will at the present time is the same as he placed it there before the signing of the will.

Probate Judge Edwards and Deputy Grace Gamlin also testified that the condition is the same as when the will was offered for probate and copy made thereof.

It also appears from the evidence that none of the interested parties was in the Probate Judge's office on the day the will was presented for probate.

Neither plaintiff nor her witnesses present any evidence as to when or by whom the alleged change in the word "one" was made.

We find nothing in the evidence that will raise any inferences on this important question.

Following the presentation of contestant's testimony, counsel for the proponents of the will demurred to the evidence and moved for a directed verdict. This being overruled, the proponents then offered their testimony. There being no further testimony offered, they again made motion for a directed verdict, which was overruled.

The jury returned a verdict in the nature of a special verdict, which, omitting the formal parts, reads as follows:

"We, the jury, being fully impaneled, sworn and affirmed, on the issues joined herein, find that the paper writing here shown to us, and admitted to probate in the Probate Court of Madison County, State of Ohio, on the 17th day of January, 1938, purporting to be the last will and testament of Philip Becker, deceased, is the valid last will and testament of the said Philip Becker, deceased.

And we do further find that the alteration changing the word two to the word one in line 10 of Item 4 of said will was made after Philip Becker executed said will, and as executed said line 10 read as follows: The sum of Two Thousand, etc.,

And we do so render our verdict upon the concurrence of nine members of said jury, that being three-fourths or more of our number. Each of said jurors concurring in said verdict signs his name hereto this 31st day of May, 1939."

Then follows the signature of nine members of the jury.

Following the verdict of the jury defendants filed motion for judgment notwithstanding the verdict, and also filed motion for new trial, both of which in order were overruled.

Defendants duly filed notice of appeal within the statutory time.

The law is well defined that erasures, changes, interlineations, or abstractions in a paper writing executed as a will, do not vitiate the instrument if made before its execution. 18 Ruling Case Law, (Wills), 142; **Haynes v Haynes, 33 Oh St 598**; 67 A. L. R., 1139.

If of substance and made subsequent to the execution and before probate such act either vitiates the entire will or the particular part to which it relates, if separable and not doing violence to the testator's intent.

Alterations of any sort made in a will by a stranger to it, without the knowledge of the testator, have no effect whatever, and the instrument must be admitted to probate as it stood originally.

"Such changes are a mere spoliation,

and parol evidence will always be received to show the contents of the will."

**41 O. Jur. (Wills) Sec. 153;**
28 Ruling Case Law (Wills) Sec. 144.

In some jurisdictions other than Ohio the principle is announced that changes of substance through erasures or alterations, if unexplained, may cast suspicion to the point that the probate of the will may be denied. In some states the burden of proof is placed upon the proponents to show that such alterations were made prior to the signing of the will. Ohio does not follow this rule. The question is directly passed upon in the case of **Haynes v Haynes, 33 Oh St 598.** Syllabus 8 reads as follows:

"8. If it appears that such alteration was made before execution, then the paper writing, as it reads after such alteration, is the will; if made after such execution, and such alteration does not invalidate the instrument, then the jury should, by special verdict, establish the will as it read before such alteration."

Syllabus 8 is only quoted for the purpose of disclosing that the question of alteration was under consideration.

Syllabus 9 relates to the question of burden of proof, and reads as follows:

"9. Proceedings to contest the validity of a will under the statute are in the nature of an appeal from the order of probate thereof, and all the material facts in issue, are to be heard and determined de novo as though such order of probate had not been made; except that such order of probate is prima facie evidence of the due attestation, execution and validity of the will, and the burden of proof is on the contestants to invalidate it."

We also refer to the court's opinion, starting at page 616.

This case has been referred to with approval as follows: **47 Oh St 329; 52 Oh St 526; 33 W. L. B. 277; 6 Oh Ap 459; 26 C. C. (N.S.) 63; 6 C. C. 297; 113 U. S. 386; 28 L. Ed. 1029; 5 Fed. 390.**

In the instant case the trial court in his charge to the jury properly placed the burden of proof upon the contestant.

If the vital issue involved in the instant case would be grounded upon the single fact as to whether or not when the plaintiff and her witnesses first saw the will, the word "one" was written in longhand, and afterwards was printed, then we would be limited in our determination as to the question of the weight of the evidence. However, this matter is unimportant unless we can find in the record some evidence warranting the determination that the change was made from "two" to "one" after the paper writing was signed by the decedent, Philip Becker. We have read and reread the record and can find nothing that would warrant such a conclusion. The burden being upon the contestant and there being no evidence supporting the real issue, we are constrained to the view that the trial court was in error in not sustaining the motion for directed verdict.

An alteration through which the word "one" written in longhand was changed to a printed one would not void the will, no matter when made.

If there was any substantive evidence that the word "two" was changed to "one" after the execution of the will, then the evidence of alteration from script to print might be corroborative of the vital question. However, under the state of the record it cannot be corroborative because there is nothing to corroborate.

Even if the proponents of the will had introduced no evidence at all our conclusion would remain the same and we would be compelled to hold that there was a total failure of evidence as supporting the essential proposition that the paper writing in question was materially altered after its execution by the testator.

Giving the contestant's evidence the most favorable light, as we are bound to do, and allowing it every permissible inference, we have nothing more than that the word "one" written in script was changed to print. When this was done and by whom is not known.

Coming now to enter judgment which should have been entered, plaintiff's petition will be dismissed at her costs.

The cause is remanded for collection of costs and such other proceedings as are required under the law.

HORNBECK, PJ. & GEIGER, J., concur.